(C.D. 4870)

WAY DISTRIBUTORS, INC., PLAINTIFF, *v.* UNITED STATES, DEFENDANT

*Sheets of Rubber*

Consolidated Court No. 73-4-00943

(Decided August 13, 1980)

*Doherty and Melahn* (*William E. Melahn* and *Robert Emmet Mullin, Jr.*, on the memorandum) for the plaintiff.

*Alice Daniel,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, Field Office for Customs Litigation (*Jerry P. Wiskin* on the memorandum), for the defendant.

*Murray Sklaroff, amicus curiae.*

*Lamb & Lerch* (*David R. Ostheimer* and *Sidney H. Kuflik* on the memorandum), *amicus curiae.*

WATSON, Judge: This consolidated action challenges the classification of sheets of rubber used for making shoe soles. The imported products are known by the trade names of Bovinide, Polyflex, Superlite, and Norazell. Bovinide will be used here to refer to all of them. The products were exported from West Germany and entered at the Port of Boston in 1972 and 1974.

The imported sheets were classified as expanded rubber under item 770.80 of the Tariff Schedules of the United States and assessed with duty at the rate of 12.5 percent ad valorem. Plaintiff claims that these sheets should be classified as rubber sheets under item 771.42, dutiable at the rate of 6 percent ad valorem, or, alternatively, as rubber articles not specially provided for under item 774.60, dutiable at the rate of 8.5 percent ad valorem.

Plaintiff also claims that ORR Ruling 202-71, upon which the disputed classification was based, was promulgated in violation of the rulemaking provision of the Administrative Procedure Act, 5 U.S.C. 553. Plaintiff further claims that ORR Ruling 202-71 was

issued in violation of section 516 of the Tariff Act of 1930, of which more anon.

The crux of plaintiff's classification claim is the argument that the importations are not expanded rubber, yet the evidence shows that they are expanded by means of a blowing agent albeit to a lesser degree than other expanded rubber. Plaintiff tried to prove that the lesser degree of expansion made them something other than expanded rubber, something assertedly known commercially as semiexpanded, microcellular or semicomparted rubber. However, plaintiff failed to persuade the court that the importation represents a distinctly named commercial product.

The distinctions drawn by plaintiff are entirely matters of gradation in an article with the same general characteristics and uses, i.e., expanded rubber used for shoe soles. Plaintiff failed to prove that use of magnification to detect the regular cellular construction (which is the visual evidence of expansion) was improper or indicates a product distinct for tariff purposes from one whose structural character can be determined with the naked eye.

Apart from its definitional argument plaintiff attacked the classification on procedural grounds. The underlying ORR Ruling 202–71, which set the standard of microscopic enlargement of 30 diameters for the detection of expanded rubber, was composed as a response to a letter written to the Commissioner of Customs by counsel for the Heel and Sole Division of the Rubber Manufacturers Association, Inc. That letter of June 3, 1970, expressed concern with the classification of imported synthetic rubber shoe-soling material and argued that the importations were expanded by the introduction of a blowing agent and were being imported at lower rates of duty than those applicable to expanded synthetic rubber.

According to plaintiff, ORR Ruling 202–71 was a "rule" and the process by which it was composed was "rulemaking," all within the Administrative Procedure Act, 5 U.S.C. 551(4).

As a consequence, plaintiff asserts that ORR Ruling 202–71 is invalid because it was issued without conformity to the requirements of the Administrative Procedure Act, namely, without public notice of the proposed rule in the Federal Register under 5 U.S.C. 553(b) and without affording interested persons an opportunity to participate in the rulemaking under 5 U.S.C. 553(c). Although the defendant does not dispute the general applicability of the terms of the Administrative Procedure Act, it does argue that ORR Ruling 202–71 is an "interpretative rule" which is specifically excepted from the notice and participation requirements by 5 U.S.C. 553(b)A. Defendant's point is well taken. In essence, ORR Ruling 202–71 is the agency's statement of its understanding of the meaning of a specific tariff description.

It is an administrative construction of language which is eventually subject to judicial construction and falls squarely within the meaning of interpretation.

This ruling is a typical interpretative rule in that it defines the agency's understanding of the statutory term "expanded rubber." See K. Davis, "Administrative Law Treatise" section 503 at 300-304 (1958). Plaintiff argues that the ruling had a "substantial impact," in that it led to a doubling of its duty payments. It thus seeks to align itself with cases which measure the "impact" of a rule to determine whether procedural safeguards should be utilized for the making of a rule which might normally be exempt from section 553 notice and comment requirements. See for example, *Pharmaceutical Manufacturers Assn.* v. *Finch*, 307 F. Supp. 858 (D. Del. 1970). However, the court has found no example of the impact test in use for a rule which is unambiguously interpretative and, in addition, no reason to apply it here. Interpretative rules of a strictly definitional nature may have a far greater impact than a definition of expanded "rubber" and still be excluded from the requirements of section 553. See *Eastern Kentucky Welfare Rights Organization* v. *Simon*, 506 F. 2d 1278 (D.C. Cir. 1974). The impact test appears to be a useful device for arriving at the procedures of rulemaking when the rule does not fit easily into one of the section 553 exemptions or, conceivably, as a measure of when common law concepts of elementary fairness are called into play. In any event, the impact should be a drastic one, in which vital interests are affected before the court steps beyond the terms of section 553. See K. Davis, "Administrative Law of the Seventies" section 6.01-7 (1976). The effect of the ruling under consideration is a normal effect of rulings interpreting tariff language and no exceptional factors distinguish it from other rulings. To attribute "substantial impact" to every ordinary, adverse interpretative ruling would be absurd. Nothing would be left of the necessary exception of interpretative rules from the notice and comment requirements. See K. Davis, "Administrative Law Treatise" section 6.30 at 595 (2d ed. 1978).

Additional arguments by plaintiff were without merit. The fact that this ruling may have reversed a prior ruling is of no consequence. In either event it is an exempt interpretative rule. In making this rule the agency was not required to consult plaintiff nor was it required to avoid communication with those advocating an interpretation adverse to plaintiff. Interested parties may communicate their views to the agency at any time and in any manner not inconsistent with statute or law. The existence of section 516 of the Tariff Act of 1930, which allows an American manufacturer to complain and seek to change the classification of imported merchandise does not mean that section 516 is the only permissible way for American manufacturers

to attempt to bring about a change in import classification. Such a restrictive view finds no support in law or legislative history.

For the reasons expressed above the court finds that the classification was substantively and procedurally correct and judgment will enter accordingly.