**WAY DISTRIBUTORS, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

No. 81–2.

United States Court of Customs and Patent Appeals.

June 18, 1981.

Walter E. Doherty, Jr. and William E. Melahn, Boston, Mass., for appellant.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, Attorney in charge, Jerry P. Wiskin, New York City, for appellee.

David R. Ostheimer and Sidney H. Kuflik, New York City, amicus curiae.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

NIES, Judge.

This appeal is from the judgment of the United States Customs Court (now the United States Court of International Trade), —— Cust.Ct. ——, C.D. 4870 (1980), sustaining the classification of appellant's goods as expanded rubber. We affirm.

*Background*

Appellant imported sheets of rubber, which are used in making shoe soles, from West Germany in 1972 and 1974.

The importations were classified as "expanded rubber" under item 770.80 of the Tariff Schedules of the United States (TSUS).[1] Appellant contends the products are "semi-expanded" not "expanded" and, therefore, should properly be classified as rubber sheets under item 771.42, TSUS,[2] or, alternatively, as rubber articles not specially provided for under item 774.60, TSUS.[3]

1. Schedule 7, Part 12, Subpart A:

```
Expanded, foamed, or sponge rubber or plastics,
    and articles not specially provided for
    wholly or almost wholly of such rubber or
    plastics:

         *          *          *

    Flexible:

         *          *          *

770.80        Other . . . . . . . . . . . . . . 12.5% ad val.
```

2. Schedule 7, Part 12, Subpart C:

```
Films, strips, sheets, plates, slabs, blocks,
    filaments, rods, seamless tubing, and other
    profile shapes, all the foregoing wholly or
    almost wholly of rubber or plastics:

         *          *          *

    Not of cellulosic plastics materials:

    Film strips, and sheets, all of the foregoing
        which are flexible:

         *          *          *

771.42        Other . . . . . . . . . . . . . . 6% ad val.
```

3. Schedule 7, Part 12, Subpart D:

```
Articles not specially provided for,
    of rubber or plastics:

         *          *          *

774.60        Other . . . . . . . . . . . . . . 8.5% ad val.
```

Appellant also asserted that Ruling 202–71 of the Office of Regulations and Rulings (ORR), issued May 12, 1971, upon which the disputed classification was based, was put into effect in violation of the rule-making provisions of the Administrative Procedure Act, 5 U.S.C. § 553, and without affording appellant the safeguards of section 516 of the Tariff Act of 1930, 19 U.S.C. § 1516.

The Court of International Trade found appellant's goods, which the evidence showed were expanded by means of a blowing agent, albeit to a lesser degree than some forms of expanded rubber, were properly classified.[4] The court rejected appellant's contention that where expansion could be detected only with magnification, and particularly 30 power magnification, such products are commercially different from the expanded rubber products (e. g., sponge rubber) classifiable under item 770.-80, TSUS.

Addressing the procedural issues raised by appellant, the court below held that ORR Ruling 202–71, which established a standard of microscopic enlargement of 30 diameters for the detection of expansion in rubber, is an "interpretative rule" which defines the agency's understanding of item 770.80, TSUS. Such rulings are specifically exempted from the notice and participation requirements of 5 U.S.C. § 553. The court also held that section 516 of the Tariff Act of 1930, which allows American manufacturers to complain and seek to change the classification of imported merchandise, does not establish the sole manner in which an interested party may communicate its views to Customs. Thus, there was no impropriety in issuing ORR Ruling 202–71 as a result of a letter from counsel for the Rubber Manufacturers Association, Inc., (RMA) concerning the classification of appellant's merchandise.

## OPINION

Turning first to the classification issue, we agree with the court below that the imported products, which appellant characterizes as "semi-expanded," are "expanded" within the meaning of item 770.80, TSUS, and that appellant failed to prove error in the Customs Service's use of a 30 diameters magnification standard in order to detect expansion.[5] The plain language of the tariff provision makes it encompass all expanded rubber without regard to various degrees of expansion. A product either is or is not expanded. Thus, appellant's product, which contains an effective blowing agent, *is* expanded for tariff purposes. Moreover, the tariff schedule is not directed toward the manner in which such expansion is or can be detected. Presence of expansion, in and of itself, regardless of the method or manner by which it is detected, makes it classifiable as expanded rubber. The absence of an industry standard of magnification to detect expansion does not demonstrate that the test adopted by the Customs Service results in incorrect classification.[6]

---

**4.** Expansion of rubber is accomplished by the use of a blowing agent, such as azodicarbonamide, during production which increases the volume and results in the formation of closed cell structure.

**5.** Appellant's assertion that at 30 diameters magnification an observer cannot discriminate between a cross-section of steel and a cross-section of rubber is irrelevant and unsupported. The photograph referenced by appellant depicts not a cross-section of steel, but rather the surface of a sheet of 32 gauge cold rolled steel after it was sand blasted. That pitting inflicted on a surface can be observed with 30 diameters magnification does not indicate that cellular structure of steel can be observed under such magnification, or that such magnification is improper for detecting cellular structure in rubber. Appellant proffers no basis for rejecting a 30 diameters magnification standard other than there being "no magnification test recognized by the Rubber Industry for determining expansion of rubber."

**6.** Appellant contends that the Customs Service should determine whether an article is expanded by performing a series of tests consisting of not only visual, naked eye inspection of the cellular structure of the rubber, but also determination of its hardness by a Shore A hardness test, and its specific gravity.

Turning to the procedural issues, appellant has expressly abandoned its assertion that ORR Ruling 202–71 was issued in violation of the Administrative Procedure Act, and relies solely on purported violations of section 516 of the Tariff Act of 1930.[7] Accordingly, we need only address the § 516 issue, which appellant argues was not adequately considered below.

Appellant contends that a June 3, 1970 letter from RMA's attorneys to the Customs Service must be construed as a defective complaint under § 516, that RMA had no standing to file such a complaint because it is a trade association; that ORR Ruling 202–71 issued as a result of that letter;[8] that ORR Ruling 202–71 issued in violation of § 516 because the ruling was based on a complaint filed by a party having no standing to file such a complaint; that the publication and 30-day grace period requirements of § 516 were ignored; and that, consequently, classification in item 770.80, TSUS, is "null and void and of no effect."[9]

---

Testimony below clearly indicates that the specific gravity of the imported article is not determinative of whether the article is expanded, and that the Shore A hardness test has no bearing on such determination. Accordingly, such additional tests are inappropriate.

7.   In pertinent part, 19 U.S.C. § 1516 in effect on June 3, 1970, read as follows:

§ 1516.  Appeal or protest by American producers . . . .

(b) Classification.  The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of, and the rate of duty, if any, imposed upon, designated imported merchandise of a .class or kind manufactured, produced, or sold at wholesale by him.  If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being assessed, he may file a complaint with the Secretary, setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief.  If the Secretary decides that the classification of, or rate of duty assessed upon, the merchandise is not correct, he shall notify the collectors as to the proper classification and rate of duty and shall so inform the complainant, and such rate of duty shall be assessed upon all such merchandise entered for consumption or withdrawn from warehouse for consumption after thirty days after the date such notice to the collectors is published in the weekly Treasury Decisions.  If the Secretary decides that the classification and rate of duty are correct, he shall so inform the complainant.  If dissatisfied with the decision of the Secretary, the complainant may file with the Secretary, not later than thirty days after the date of such decision, notice that he desires to protest the classification of, or rate of duty assessed upon, the merchandise.  Upon receipt of such notice from the complainant, the Secretary shall cause publication to be made of his decision as to proper classification and rate of duty and of the complainant's desire to protest, and shall thereafter furnish the complainant with such informa-

tion as to the entries and consignees of such merchandise, entered after the publication of the decision of the Secretary at the port of entry designated by the complainant in his notice of desire to protest, as will enable the complainant to protest the classification of, or rate of duty imposed upon, such merchandise in the liquidation of such an entry at such port. . . .

Section 516 was amended by Pub.L. 91–271 enacted June 2, 1970, effective October 1, 1970, but to be retroactively applied in some instances.  The parties do not argue that this amendment affects the issues raised here.

8.   The Customs Service responded to RMA by letter dated March 25, 1971, advising that a Customs' laboratory report indicated the samples furnished by RMA were synthetic rubber which had been foamed or expanded to a slight degree;  that in Treasury Decision (T.D.) 56484(36) [sic, (86)] certain other rubber soling material, also from West Germany, was found to be expanded and classifiable under item 770.80, TSUS, and that the samples are properly classifiable under the same item;  and that the presence of a blowing agent is not sufficient in and of itself to result in an article being classifiable under the provisions for expanded rubber, but rather the article must have a cellular expanded constitution, which is detected by microscopic examination of a cross-section of the article using an enlargement of 30 diameters.

This letter was distributed to all Customs officers on May 12, 1971, under the identifying number ORR 202–71, in order that such merchandise would be uniformly classified at all ports.  Appellant's earliest entries affected by the ruling were made the following year.

9.   RMA, as amicus curiae before this court, asserts that its June 3, 1970 letter was not intended to be, and could not have been, a § 516 complaint; · that prior to a complaint being filed, § 516 requires the submission of a written classification request; that § 516 does not require publication of either the written classification request or Customs' response thereto;

Appellant contends that the court below failed to discuss these issues. Moreover, appellant contends that "any attempt to secure a classification ruling by domestic interests, which circumvents Section 516 . . ., must be stricken down as wholly improper, illegal, and void." While acknowledging the Customs Service may on its own initiative make interpretative rulings, appellant would deprive Customs of this authority where a ruling results from information brought to its attention informally by interested parties.

The court below rejected appellant's contentions under § 516, stating:

> In making [interpretative ruling ORR Ruling 202–71, the Customs Service] was not required to consult plaintiff nor was it required to avoid communication with those advocating an interpretation adverse to plaintiff. Interested parties may communicate their views to the agency at any time and in any manner not inconsistent with statute or law. The existence of Section 516 of the Tariff Act of 1930, which allows an American Manufacturer to complain and seek to change the classification of imported merchandise does not mean that Section 516 is the only permissible way for American Manufacturers to attempt to bring about a change in import classification. Such a restrictive view finds no support in law or legislative history.

 We agree. Section 516 adds to the protection of U.S. industry by providing domestic manufacturers with the legal right to a remedy for injury resulting from incorrect appraisement or classification of imported merchandise. Appellant refers repeatedly to the legislative history of the section but fails to provide even a suggestion from such references that through enactment of § 516 Congress intended to sever the informal links of communication that traditionally have existed between our industry and Government.[10] When a U.S.

manufacturer does resort to § 516 proceedings, the safeguards provided thereunder to an importer become operative. However, those provisions do not deprive the Customs Service of authority to issue an interpretative ruling following informal consultation with representatives of U.S. industry.

Thus, representatives of U.S. rubber manufacturers could properly communicate with Customs Service officers without the ruling resulting from such communication being, as characterized by appellant, "wholly improper, illegal, and void." Accordingly, the Court of International Trade did not need to address the subsidiary issues of appellant's § 516 argument.

*Conclusion*

In view of the foregoing, the judgment of the Court of International Trade upholding classification of appellant's imported sheets of rubber as expanded rubber under item 770.80, TSUS, is *affirmed.*

---

and that the June 3, 1970 letter can, at most, be construed as the written classification request which precedes the filing of a complaint.

**10.** For a discussion contrary to appellant's view, see S.Rep.No. 37, 71st Cong., 1st Sess., *reprinted in* 71 Cong.Rec. 3378 (1929) in connection with a proposed amendment of § 516 to give labor the same standing that industry had under § 516.