FAG BEARINGS, LTD., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 79-9-01483

Before RESTANI, *Judge.*

(Dated May 2, 1985)

*Heron, Burchette, Ruckert & Rothwell (Thomas A. Rothwell, Jr., Joseph A. Vicario, Jr., Alfred G. Scholle)* for plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, *Susan Handler-Menahem,* Civil Division, United States Department of Justice, for defendant.

RESTANI, *Judge:* This action involves the proper classification of integral shaft bearings which contain one row of balls and one row of rollers as antifriction elements (hereafter "ball-roller bearings with integral shafts"[1]). After the merchandise was imported from Canada through the port of Detroit, Michigan, in 1978 and 1979, it was classified by the United States Customs Service ("Customs") under item 680.35 of the Tariff Schedules of the United States ("TSUS")[2], the residual "other" category following the superior heading, "ball or roller bearings, including such bearings with integral shafts, and parts thereof," and assessed duty at the rate of 1.7¢ per pound plus 7.5% *ad valorem.* Plaintiff, FAG Bearings, Ltd., claims the merchandise is properly classified under the same superior heading, but specifically under item 680.33 as "ball bearings with integral shafts," at the rate of 6% *ad valorem.*[3]

Plaintiff has met the jurisdictional requirements for relief in this court and moves for summary judgment, pursuant to Court of International Trade Rule 56. Plaintiff and defendent agree that there are no material facts in dispute and that this matter is ripe for decision.

This case presents a problem of interpretation of the TSUS, which is part of statutory law. The basic principle of statutory construction is that a statute must be construed to carry out legislative intent. *United States* v. *Siemens America, Inc.,* 68 CCPA 62, 68, C.A.D. 1266, 653 F.2d 471, 476 (1981), *cert. denied,* 454 U.S. 1150 (1982). In determining Congressional intent, the court must look to the

[1] The imported merchandise is also known as "ball roller water pump bearings, integral shaft water pump bearings, integral shaft bearings, water pump bearings and ball roller bearings." Joint Statement of Material Facts as to which there is no Genuine Issue to be Tried.

[2] Hereafter TSUS item numbers will be referred to without "TSUS" following the item number.

[3] The relevant portions of the Tariff Schedules of the United States (1978), Schedule 6—Metals and Metal Products, Part 4—Machinery and Mechanical Equipment, read:

Ball or roller bearings, including such bearings with integral shafts, and parts thereof:

| | | |
|---|---|---|
| 680.33 | Ball bearings with integral shafts | 6% *ad val.* |
| 680.35 | Other | 1.7¢ per lb. + 7.5% *ad val.* |

language of the statute. *Siemens,* 68 CCPA at 68, 653 F.2d at 476. *See, e.g., Way Distributors, Inc.* v. *United States,* 68 CCPA 57, 59, C.A.D. 1265, 653 F.2d 467, 469 (1981); *General Electric Co.* v. *United States,* 67 CCPA 65, 67, C.A.D. 1245, 620 F.2d 883, 884 (1980).

As indicated, the superior heading to items 680.33 and 680.35 reads: "Ball or roller bearings, including such bearings with integral shafts, and parts thereof." These words designate a classification category which includes ball bearings, roller bearings, ball bearings with integral shafts, roller bearings with integral shafts,[4] ball-roller bearings with integral shafts, and parts of any of these items. Item 680.33 provides for "ball bearings with integral shafts." Item 680.35, as the residual "other" provision, includes all the items listed in the superior heading except "ball bearings with integral shafts."[5] Defendant argues that these articles are clearly not "ball bearings with integral shafts," but the statute is by no means clear. Even though the imported merchandise contains antifriction rollers as well as antifriction balls, it fits the general description of the named item in that it contains ball bearings and a shaft which is integral to the article.

Plaintiff argues that the *eo nomine* classification of "ball bearings with integral shafts" includes ball-roller bearings with integral shafts and that the latter are merely an improved version of the former. The meaning of an *eo nomine* classification, such as item 680.33, is determined as of the time of enactment of the tariff provision. *See Davies Turner & Co.* v. *United States,* 45 CCPA 39, 41, C.A.D. 669 (1957). Tariff statutes, however, are drafted for the future as well as the present. *United States* v. *Standard Surplus Sales, Inc.,* 69 CCPA 34, 38, 667 F.2d 1011, 1014 (1981); *Keuffel & Esser Co.* v. *United States,* 7 CIT 384, Slip Op. 84–75 at 7 (June 22, 1984). An *eo nomine* classification includes all articles subsequently created which fairly come within its scope. *Sears, Roebuck & Co.* v. *United States,* 46 CCPA 79, 82, C.A.D. 701 (1959). With regard to this case, it appears that ball-roller bearings with integral shafts were not known to Congress in 1965 when it enacted the Tariff Schedules Technical Amendments Act, which resulted in the applicable version of the relevant TSUS items. Tariff Schedules Technical Amendments Act, Pub. L. No. 89–241, 79 Stat. 933 (1965). Plaintiff submitted an affidavit from Harold G. Paul, its manager of Canadian product sales, in which Mr. Paul affirmed that FAG Bearings, Ltd., first began manufacturing ball-roller bearings with integral shafts for commercial sale in 1972 and that the first use of this kind of

---

[4] The parties' briefs indicate that "roller bearings with integral shafts" do not exist and there is at present no application for such an item.

[5] In addition to "ball bearings with integral shafts", item 680.35 does not include "Canadian article[s]" under this general heading which are also part of "original motor vehicle equipment." *See* item 680.34 of the Tariff Schedules of the United States. Neither party argues that the imported merchandise here is part of "original motor vehicle equipment." Item 680.34, therefore, does not effect classification in this case.

integral shaft bearing in the United States was in a Ford Motor Company 1970-model-year vehicle.[6]

The basic requirement of classification under a given *eo nomine* item is that the new article possess an essential resemblance to the one named in the statute. *Standard Surplus,* 69 CCPA at 38, 667 F.2d at 1014. If the difference between the two articles is in the nature of an improvement, and the essential character of the article is preserved or only incidentially altered, an unlimited *eo nomine* designation will include both articles. *Robert Borsch Corp.* v. *United States,* 63 Cust. Ct. 96, 104, C.D. 3881 (1969); *see also A.J. Arango, Inc.* v. *United States,* 1 CIT 271, 274–75, 517 F. Supp. 698, 702 (1981), *aff'd,* 69 CCPA 85, 671 F.2d 484 (1982).

For example, the court in *United-Carr Fastener Corp.* v. *United States,* 56 Cust. Ct. 347, 353, C.D. 2648 (1966), *aff'd,* 54 CCPA 89, C.A.D. 913 (1967) found that the "Tee Nut", used as a fastening device to join objects together, was simply an improved nut. The fact that a "Tee Nut" eliminates the need for a washer, is a labor and timesaving device in joining objects together, and can be used for blind applications (where conventional nuts could not properly be used), did not result in the "Tee Nut" being classified as something other than a nut. The court found that a "Tee Nut" should be given its claimed *eo nomine* classification as a nut notwithstanding the existence of additional features and capabilities. *United-Carr,* 56 Cust. Ct. at 352–53. Similarly, the court in *Avdel Corp.* v. *United States,* 73 Cust. Ct. 200, C.D. 4575 (1974), held that the presence of a mandrel as part of a rivet did not make the article anything other than a rivet. The court reasoned that the mandrel aided in the process of fastening materials together, and that fastening materials together is the purpose of a rivet.

In *A.J. Arango,* 1 CIT 271, 517 F. Supp. 698, plaintiff argued that a "torsionally flexible coupling" was more than a shaft coupling. Plaintiff argued that the fact that the imported merchandise had the ability to couple shafts together was merely incidental to the article's primary functions—"to detune the natural frequency or input roughness of an engine's crank effect or torque, and to dampen its torsional vibrations." 1 CIT at 271, 517 F. Supp. at 271. The detuning and dampening served to alleviate stress in the shafting, which could cause shaft failure. The court found that the ability of the imported coupling to dampen torsional vibration and resonance was not a separate function, but was one of the normal functions of a flexible shaft coupling. The court held that since the improvements did not alter the essential character of the merchandise, it was nothing more than an improved type of coupling.

To determine whether or not the imported merchandise here is indeed merely an improved "ball bearing with integral shaft," the

---

[6] The parties cite to a 1973 report of the United States Tariff Commission to the President. This report is essentially irrelevant to this case because it does not discuss ball-roller bearings with integral shafts. *See Antifriction Balls and Ball Bearings, Including Ball Bearings with Integral Shafts and Parts Thereof,* Report to the President on Investigation No. TEA–I–27, T.C. Pub. 597 (July 1973).

court must carefully examine the similarities and differences between the two articles. The first focus is on the physical characteristics of the types of integral shaft bearings.

Both integral shaft bearings include an outer ring which is basically a cylinder with a hollow chamber. Through this outer ring chamber passes a solid shaft, which is generally cylindrical in shape. On each end of the inner surface of the outer ring are located annular grooves for insertion of flexible metal reinforced seals. The record here indicates that the seals perform a wiping function on the shaft's surface and prevent foreign material from entering the bearing cavity and grease from leaving it. The only physical difference between integral shaft bearings with ball bearings only and integral shaft bearings with ball and roller bearings is that one of the two ball bearing units in the former is replaced by a roller bearing unit in the latter.

A ball bearing consists of a ground and honed annular groove or raceway in which a row of balls runs. A roller bearing consists of a ground and honed annular cylindrical surface on which a row of rollers runs. The balls and rollers are spaced equiangularly by nonmetallic cages or retainers. For ball bearings, a ground and honed annular groove is located in the shaft radially opposite the outer ring groove. This forms the inner raceway in which the balls run. In roller bearings the rollers run on the ground and honed cylindrical surface of the shaft. Except for one roller bearing unit replacing one ball bearing unit, the two items look identical.

Next, the use of an imported article may be considered in determining whether the article falls within an *eo nomine* tariff provision. *United States* v. *Quon Quon Co.,* 46 CCPA 70, 73, C.A.D. 699 (1959). It is necessary to look closely at the role of the roller bearing unit, which replaces one of the ball bearing units, to see if a ball-roller bearing with integral shaft performs a function separate and distinct from the primary function of an integral shaft bearing with ball bearings only. *Cf. A.J. Arango,* 1 CIT at 275, 517 F. Supp. at 702. Rollers in a bearing unit absorb radial loads (force perpendicular to the shaft and axis of the bearing), while ball bearings primarily absorb thrust (force paralled to the shaft). Ball-roller bearings with integral shafts, therefore, can better handle an unbalanced load. Also, ball-roller bearings with integral shafts are stronger, have greater rigidity (stiffness), and have a greater fatigue life than integral shaft bearings with ball bearings only. There is no difference in wear resistance between the balls and rollers.

The ball-roller bearings with integral shafts and the integral shaft bearings with ball bearings only are used interchangeably in similar equipment. At least ninety-eight percent of the imported merchandise is used in automatic water pumps.[7] The primary function of an

---

[7] The agreed statement of facts indicates that both types of integral shaft bearings are used secondarily in other types of water pump assemblies, belt sanders, washing machines, separation rolls, power saws, attic fans and lawn mowers.

cut away for viewing

INTEGRAL SHAFT BEARING WITH
BALL BEARINGS ONLY

cut away for viewing

INTEGRAL SHAFT BEARING WITH
BALL AND ROLLER BEARINGS

integral shaft bearing with ball bearings only in an automotive water pump assembly is to transmit rotational force from a belt and pulley at one end to an impeller pump at the other. When a ball-roller bearing with integral shaft is used in an automotive water pump assembly, it has precisely the same primary function. Thus, this is not a situation where the imported merchandise performs a function separate and distinct from the primary function of integral shafts with ball bearings only. Instead, rollers serve to improve the use of the article as an integral shaft ball unit, without altering its basic nature. Stated otherwise, ball-roller bearings with integral shafts are merely an improvement on, and are essentially the same article as, ball bearings with integral shafts.

In addition to the statutory language of the *eo nomine* provision, important evidence of the intent of Congress is legislative history. *Cf. British Steel Corp.* v. *United States,* 6 CIT 200, 573 F. Supp. 1145, 1148 (1983). *See generally* Frankfurter, *Some Reflections on the Reading of Statutes,* 47 COLUM. L. REV. 527 (1947). The present form of item 680.35 was enacted by Congress in 1965. The previous item 680.35 read: "Ball or roller bearings, and parts thereof." There was neither a general heading for this item nor an item 680.33. In 1964 and 1965, Pollard Bearings Corporation imported from England ball bearings with integral shafts. Customs classified this merchan-

dise as parts of pumps for liquids under item 660.90. Pollard challenged this classification in the United States Customs Court. *Pollard Bearings Corp.* v. *United States,* 71 Cust. Ct. 1, C.D. 4461, 363 F. Supp. 1191 (1973), *rev'd,* 62 CCPA 61, 511 F.2d 568, *on remand,* 75 Cust. Ct. 149, 405 F. Supp. 1074 (1975). It was that challenge that alerted Customs and Congress to the problem of classifying ball bearings with integral shafts. Congress specifically addressed that problem in its amendments to the 1965 TSUS. The legislative history with regard to those amendments provides some insight into Congress' intent with regard to the subject merchandise.

First, both the House[8] and Senate[9] reports use the terms "ball bearings with integral shafts" and "bearings with integral shafts" interchangeably. H.R. Rep. No. 342, 89th Cong., 1st Sess. 24 ("House Report") *and* S. Rep. No. 530, 89th Cong., 1st Sess., *reprinted in* 1965 U.S. CODE CONG. & AD. NEWS 3442–43 ("Senate Report"). The House Report, in describing the subject matter of what will fall under the new item 680.33 in its first paragraph, uses the terms "ball bearings with integral shafts," and "integral shaft bearings" interchangeably. In the second paragraph, the report explains that item 680.35 was changed in order to make specific mention of "bearings with integral shafts." Similarly, the Senate report titles its paragraph addressing item 680.33, "*Bearings* with integral shafts" (emphasis added). The explanatory notation then refers to the classified merchandise as "ball bearings with integral shafts." Consequently, the legislative history focuses on the *integral shaft* aspect of the article, and not on the type of antifriction element used. This is consistent with the reading of the term "ball bearings with integral shafts" which plaintiff asserts.[10]

---

[8] H.R. Rep. No. 342, 89th Cong., 1st Sess. 24, reads in relevant part:

(d) *Ball bearings with integral shafts.*—*Integral shaft bearings* are bearings so designed that the inner races for the balls are cut into a shaft thus eliminating the necessity for a separate inner race. Such bearings are produced in several sizes with the principal variations within each size consisting mainly of differences in the length of the integral shaft or in the design of the protruding shaft end or ends. Despite such variations, the outside diameter and length of the outer bearing housing for each size unit usually are uniform. Such bearings are widely used in water pumps, textile machines, power tools, household appliances, and other machines.

Subsection (d) of section 30 amends item 680.35 covering "ball or roller bearings" to make specific mention of *bearings with integral shafts.* Under this amendment, ball bearings with integral shafts would be dutiable at 12 percent ad valorem. (Emphasis added).

[9] S. Rep. No. 530, 89th Cong., 1st Sess. *reprinted in* 1965 U.S. CODE CONG. & AD. NEWS 3442–43, stated in relevant part:

Section 36. Automobile, etc., parts.—This section makes a number of changes in the new schedules to clarify existing categories or to provide new categories. Generally the rate changes restore rates which applied under the old tariff structure.

(c) Pumps for liquids.—This provision creates a specific category for fuel injection pumps for diesel type engines and provides a weighted average rate of 6 percent (rather than 12 percent). It also reduces the weighted average rate for other pumps for liquids to 10 percent (from 12 percent). The weighted average rate reflects automotive and other uses to which these pumps may be adapted.

(d) *Bearings with integral shafts.*—This provision creates a specific category for *ball bearings with integral shafts* and provides a rate of 12 percent. (This is the same rate which the Customs Service applied when it classified this article as a "pump" part). (Emphasis added).

[10] Defendant argues that plaintiff's reading renders the new superior heading to item 680.35 essentially meaningless because under plaintiff's view the only categories that Congress created in 1965 were bearings with integral shafts (item 680.33) and bearings without integral shafts (item 680.35). The superior heading is not rendered meaningless by plaintiff's reading because the new item 680.35, at a minimum, also includes parts of integral shaft bearings.

Defendant, however, argues that: (1) there is a longstanding administrative practice which has consistently classified ball-roller bearings with integral shafts under item 680.35; (2) that Congress has ratified this alleged practice; and (3) that the court's decision should be controlled by such a ratification of administrative practice. Defendant neither establishes a uniform administrative practice nor adequately demonstrates a Congressional ratification of such a practice. Defendant does not demonstrate that Congress, in its later amendments to the TSUS, was aware of this disputed classification issue or of the alleged administrative practice. (This differs from the dispute in *Pollard,* of which Congress was aware). Consequently, defendant has not persuaded the court that Congress indeed ratified a long-established administrative practice in this case. *See Haig* v. *Agee,* 453 U.S. 280, 301 (1981).

"[A]n *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of [the] article." *Nootka Packing Co.* v. *United States,* 22 CCPA 464, 470, T.D. 47464 (1935). The court has not been presented with any evidence of legislative intent, judicial decision, administrative practice, or commercial designation which would persuade the court that the subject merchandise should be classified other than as "ball bearings with integral shafts." To the contrary, plaintiff has shown that the imported merchandise is a type of "ball bearing with integral shaft." Therefore, the court finds the imported merchandise to be included in the *eo nomine* tariff provision for "ball bearings with integral shafts."

For the above stated reasons, plaintiff has met its burden in proving defendant's classification incorrect. *See Jarvis Clark Co.* v. *United States,* 733 F.2d 873, 881, *reh'g denied,* 739 F.2d 628 (Fed. Cir. 1984). In addition, plaintiff has shown the correct classification to be item 680.33. Accordingly, plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied.