**SIEMENS AMERICA, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 4856; Consolidated Court No. 72–5–01093.**

United States Customs Court.

May 13, 1980.

Freeman, Meade, Wasserman & Schneider, New York City (Louis Schneider and Kenneth Nathan Wolf, New York City, of counsel), for plaintiff.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, and Madeline B. Kuflik, New York City, trial attorney, for defendant.

NEWMAN, Judge:

In these consolidated cases, plaintiff challenges the classification by Customs of certain gas tube surge voltage protectors ("SVPs") exported from West Germany on various dates from 1969 to 1978, and entered at the port of New York.

The merchandise in issue was classified under the provision in item 685.90 of the Tariff Schedules of the United States (TSUS) for "other electrical apparatus * * for the protection of electrical circuits" and assessed duty at the rate of 14, 12, 10 or 8.5 per centum ad valorem, depending upon the year of entry, pursuant to T.D. 68–9. Plaintiff claims that the imports are properly dutiable under the provision in item 709.-66, TSUS, for "Apparatus based on the use of radiations from radioactive substances" at the rate of 9.5, 8, 7 or 6 per centum ad valorem, depending upon the year of entry, pursuant to T.D. 68–9.[1] Alternatively, plaintiff claims that the merchandise is dutiable as "Other" electronic tubes under item 687.60, TSUS, at the rate of 10, 8.5, 7 or 6 per centum ad valorem, depending

upon the year of entry, pursuant to T.D. 68–9.

Plaintiff's alternative claim under item 687.60, TSUS, is sustained, for the reasons indicated hereinafter.

## STATUTES INVOLVED

Tariff Schedules of the United States, 19 U.S.C. § 1202:

Classified under:

Schedule 6, Part 5.—ELECTRICAL MACHINERY AND EQUIPMENT

Part 5 headnotes:

1. This part does not cover—

\* \* \* \* \* \* \*

(vi) electrical instruments and apparatus provided for in schedule 7.

\* \* \* \* \* \* \*

685.90  Electrical switches, relays, fuses, lightning arresters, plugs, receptacles, lamp sockets, terminals, terminal strips, junction boxes and other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof .................. [14, 12, 10 or 8.5% ad val., depending on the year of entry]

Claimed under:

Schedule 7, Part 2, Subpart B.—Medical and Surgical Instruments and Apparatus; X-Ray Apparatus

\* \* \* \* \* \* \*

Apparatus based on the use of X-rays or of the radiations from radioactive substances, whether for medical, industrial, or other uses, and parts thereof:

\* \* \* \* \* \* \*

709.66  Apparatus based on the use of radiations from radioactive substances, and parts thereof .... [9.5, 8, 7 or 6% ad val., depending on the year of entry]

---

1. Plaintiff (brief, p. 8, n. 3) has abandoned this claim respecting SVP tube # A52–C350X.

Alternatively claimed under:

Schedule 6, Part 5.—ELECTRICAL MACHINERY
AND EQUIPMENT

\* \* \* \* \* \* \*

Electronic tubes (except X-ray tubes);
photocells; transistors and other re-
lated electronic crystal components;
mounted piezoelectric crystals; all
the foregoing and parts therof:

\* \* \* \* \* \* \*

687.60    Other . . . . . . . . . . . . . . . . . . . . . . [10, 8.5, 7 or
6% ad val.,
depending
on the year
of entry]

### THE FACTS [2]

The SVPs in issue are hermetically sealed gas discharge tubes consisting of two electrodes, a glass insulator filled with argon (an inert gas), and a minute quantity of promethium 147 (a radioactive material). In the electronics field, SVP tubes are called "cold cathode tubes", "gas discharge tubes" and "gas spark gap tubes" (R. 38). The function of the subject SVP tubes is to provide a conductive path for unwanted and excessive voltage transients,[3] thereby preventing the transient energy and associated voltages from damaging electric circuitry and causing harm to personnel.

SVPs are designed to switch rapidly at a specific voltage level, referred to as the "breakdown voltage", from a nonconductive state to a conductive state when subjected to an excessive voltage transient. As the voltage across an SVP tube increases, ionization of the inert gas occurs and the tube becomes conductive. The flow of electrons within the tube cannot be controlled. Promethium 147, a radioactive material

contained within the instant tubes (except tube # A52–C350X), emits beta particles (radiation) which "preionize" or facilitate the ionization of the gas in the tubes and stabilize the breakdown voltage. However, the breakdown voltage is a design parameter controlled primarily by the electrode spacing and gas fill pressure of the SVP tubes, and there are many surge–protective tubes manufactured without radioactive materials.

### QUESTION PRESENTED

Are the imported SVPs properly classifiable under either item 709.66, TSUS, or item 687.60, TSUS, as alternatively claimed by plaintiff?

### OPINION

#### I

Since the record clearly establishes that the SVP tubes are used for the protection of electric circuits [4] (R. 54, 172–173, 192, defendant's exhibit A), the merchandise is described in item 685.90, TSUS, as classified by Customs. However, classification under item 685.90 is precluded by headnote 1(vi) of Schedule 6, Part 5 if the merchandise is described in item 709.66, TSUS, the provision primarily claimed by plaintiff to be applicable.

To be classifiable under item 709.66, the SVP tubes must be "based on the use of radiations from radioactive substances". As noted *supra*, the imported tubes contain the radioactive substance promethium 147 (R. 36–37, 146). Neverthe-

**2.** The record consists of two witnesses for plaintiff: Uwe Renken (plaintiff's import–export traffic manager) and Ludwig Rademacher (plaintiff's production manager in Sonora, Mexico) plus ten exhibits; and three witnesses for defendant: Richard Knapp (an electrical engineer and supervisor of special services at New York Telephone), Lewis Douglas Sweeney (sales manager for Joslyn Electronics, a supplier of surge voltage protectors, and formerly plaintiff's operations manager for surge voltage protectors and mylar capacitors), and Leonard Strauss (professor of electrical engineering and electrophysics at the Polytechnic Institute of New York) plus three exhibits.

**3.** These voltage transients are generated by both natural and manmade sources, such as lightning, interruption of current in motors, transformers, solenoids and relays, powerline shorts and other sources (defendant's exhibit B, p. 2).

**4.** The fact that the SVPs are used for the protection of electric circuits is conceded in plaintiff's exhibit 4 (p. 2), a letter from plaintiff's former counsel to the Bureau of Customs (now Customs Service) requesting a classification ruling for the tubes.

less, I have concluded that the imports are not "based on" the use of radiations from radioactive substances.

In *Webster's New International Dictionary* (2d ed. 1957), the word "base" is defined as: "2. Figuratively, the fundamental or essential part of a thing; essential principle; groundwork. * * * 4. a The main or chief ingredient of anything, viewed as its fundamental element or constituent". Thus, the language "based on" as contained in item 709.66 evinces Congressional intent to embrace merchandise in which radiation from radioactive substances is its *sine qua non*.[5] I find that radiation is not the *sine qua non* of the SVP tubes in issue, since the promethium 147 is not a fundamental and essential constituent of these tubes.

The record is clear that the specific function of the subject SVP tubes is to provide a conductive path for excessive voltage transients, and that such function of over-voltage protection is not based upon the use of a radioactive material (R. 51–52, 194). Promethium 147, the radioactive component in the imported tubes, "preionizes" the gas in the tubes[6] and stabilizes the breakdown voltage[7] (R. 125–126, 137, 147–148, 170, 193, 198–199, 214, 226). Nevertheless, the unrebutted testimony of defendant's expert witnesses shows that the gas in the SVP tubes ionizes when voltage is applied, irrespective of the presence of a radioactive substance (R. 171–172, 227–228), and that speed of ionization and a specific breakdown voltage can be achieved by means other than the use of radioactive substances. Defendant's witnesses testified, without contradiction or rebuttal, that breakdown voltage in the SVP tubes is determined primarily by the electrode spacing and the gas fill pressure, rather than radiation (R. 126–127, 191, 194–

195, 198–200, 202, 212). Significantly, that testimony is corroborated by plaintiff's own promotional brochure (defendant's exhibit B, p. 2), which states:

> The DC breakdown voltage is a design parameter controlled by the manufacturer, and *is a function primarily of the electrode spacing and the gas fill pressure.* [Emphasis added.]

Similarly, plaintiff's exhibit 12, a technical data sheet concerning Joslyn miniature gas–tube surge protectors, reads:

> When a surge exceeds the breakdown voltage of the tube (surge sparkover voltage), the gap becomes intensively ionized, and conduction takes place within a fraction of a microsecond. The ionized protector becomes a short circuit and remains so until the voltage returns to normal. *Ionization and deionization are extremely fast due to the type of gas fill and physical configuration used.* [Emphasis added.]

Like the Siemens tubes in issue, the Joslyn tubes described in plaintiff's exhibit 12 contain a radioactive material (tritium) (R. 164--166). However, the radioactive component of the Siemens and Joslyn tubes is not mentioned in the descriptive promotional literature (defendant's exhibit B and plaintiff's exhibit 12). Hence, it is evident that neither plaintiff nor Joslyn regarded the radioactive component of its tubes as an important feature.

Concededly, there are many SVP tubes manufactured without radioactive materials. For example, plaintiff admits (reply brief, p. 2, n. 1) that SVP tube model # A52–C in entry No. K213581 does not contain any radioactive material. Moreover, defendant's exhibit C, the *IEEE Standard Test Specifications for Gas Tube*

---

5. See the discussion of apparatus based on the use of radiations from radioactive substances in the *Summaries of Trade and Tariff Information* (1970), Schedule 7, Volume 2, p. 95.

6. The promethium 147 provides a certain level of energy to the gas which merely increases the speed of ionization (R. 198–199). This function of the radioactive material is analogous to the function of a catalyst in a chemical reaction. (See plaintiff's exhibit 3, p. 2.)

7. In technical terms, the D.C. breakdown voltage is defined as: "The voltage at which an abrupt transition of the gap resistance from a practically infinite value ($\pm$ 10,000 megohm) to a relatively low value (approx. 0 Ohm) occurs, when subject to a slowly rising voltage (1000V/sec or less)". (Defendant's exhibit B, p. 7.) More simply stated, the breakdown voltage is "the point at which the gas turns from a non–conductive to a conductive state" (R. 124).

*Surge–Protective Devices* (1977), published by The Institute of Electrical and Electronics Engineers, Inc., states (at p. 7); "3.2.3 Radiation. *Some* devices *may* contain irradiated material; when these are used in nuclear facilities, special consideration may be necessary". (Emphasis added.) This statement clearly demonstrates that only "some" gas tube surge–protective devices utilize radioactive substances. Significantly too, the definition of "gas tube surge arrester" found in the IEEE test specifications (exhibit C, p. 6) does not even mention or imply the use of radiation (R. 133). Plainly, then, the inclusion of a radioactive substance in the present SVP tubes was not essential to their basic function of over–voltage protection.

As analogous to the situation presented in the instant case, defendant calls attention to *Pharmacia Laboratories, Inc. v. United States*, 67 CCPA ——, C.A.D. 1235, 609 F.2d 491 (1979), wherein the sole issue presented was whether certain imported radioimmunoassay diagnostic test kits were classifiable as "usefully radioactive compounds" under item 494.50, TSUS. Citing Judge Watson's finding that the kits contained nonradioactive components which were *as important* as the radioactive component, Chief Judge Markey concluded that the kits could not be classified under item 494.50. Here, respecting even the characteristic of breakdown voltage, the record shows that electrode spacing and gas fill pressure are the primary determinants.

In sum, plaintiff's proof that the imported SVP tubes utilize a radioactive material is not sufficient to sustain its burden of proof under item 709.66 absent further evidence showing that the radioactive material is a fundamental and essential component of the merchandise. In the present case, it would require a substantial magnification of the role played by the promethium 147 to find that the SVP tubes are "based on the use of radiations from radioactive substances," within the purview of the statute. Accordingly, plaintiff's primary claim under item 709.66, TSUS, is without merit.

## II

We now turn to plaintiff's alternative claim that the merchandise falls within the *eo nomine* provision for "electronic tubes" in item 687.60, TSUS.

Fundamentally, in the absence of a special commercial designation, the language of a tariff statute is to be construed in accordance with its common meaning. Moreover, the common meaning of a tariff term is a matter of law to be determined by the Court; and in making such determination, the Court may rely upon its own understanding of the word or term used and may consult standard lexicographic and scientific authorities. Further, the testimony of witnesses respecting common meaning is advisory only and has no binding effect on the Court. *United States v. National Carloading Corp. et al.*, 48 CCPA 70, C.A.D. 767 (1961); *United States v. E. Besler & Company et al.*, 64 CCPA 121, C.A.D. 1193, 557 F.2d 270 (1977); *United States v. Corning Glass Works*, 66 CCPA ——, C.A.D. 1216, 586 F.2d 822 (1978); *Ozen Sound Devices v. United States*, 67 CCPA ——, C.A.D. 1246, 620 F.2d 880 (1980).

As indicative of the common meaning of the term "electronic tube", defendant quotes the following definitions:

*Brittania World Language Dictionary*, Volume 51 at p. 407:

Electron tube is a high vacuum tube in which a stream of electrons is emitted from a heated cathode and subjected to the controlling action of a grid which amplifies and directs the current.

*Webster's Third New International Dictionary*, Unabridged (1963):

An electronic device in which conduction by electrons takes place through a vacuum or a gaseous medium between a sealed glass or a metal container, and which has various uses (as amplification of electrical energy and the conversion of alternating current to direct current and vice versa) that are based on the controlled flow of electrons.

Predicated upon the above–quoted definitions and the testimony of its expert wit-

nesses, defendant urges that the SVPs are not "electron tubes" [8] within the common meaning of that term since the imports do not "control" the flow of electrons and they do not perform the varied functions of amplification, conversion, rectification, etc. In essence, defendant maintains that the scope of item 687.60 is restricted to those devices which perform the functions and have the physical configuration stated in the definitions submitted.

Plaintiff, in support of its contention that the SVPs fall within the common meaning of "electron tube", has cited definitions of that term set forth in several technical lexicographic authorities, which definitions are broader in application than the restrictive definitions proffered by defendant. The field of electronics is, or course, a technical one, and therefore the common meaning of the tariff term "electronic tube" should be determined in that context. A long line of authorities teaches that in instances where the common meaning of a technical term is in issue, as here, reliance should not be confined to general lexicons, but technical dictionaries should be consulted. *Brown Boveri Corp. et al. v. United States*, 53 CCPA 19, C.A.D. 870 (1966); *United States v. The Spiegel Bros. Corp.*, 51 CCPA 69, C.A.D. 839 (1964); *Firth Sterling, Inc. v. United States*, 48 CCPA 130, C.A.D. 779 (1961); *F. W. Woolworth Company v. United States*, 67 Cust.Ct. 9, C.D. 4245 (1971).

As noted *supra*, the record shows that the SVP tubes are known as "cold cathode tubes", "gas discharge tubes" and "gas spark gap tubes" (R. 38, 93, 197). Technical authorities provide the following pertinent definitions:

*IEEE Standard Dictionary of Electrical and Electronics Terms* (2d ed. 1977):

> *electron tube.* An electron device in which conduction by electrons takes place through a vacuum or gaseous medium within a gastight envelope. \* \*

*cold–cathode tube.* An electron tube containing a cold cathode.

*gas tube.* An election tube in which the pressure of the contained gas or vapor is such as to affect substantially the electrical characteristics of the tube.

*Modern Dictionary of Electronics* (4th ed. 1972):

> *electron tube* –An electron device in which the electrons move through a vacuum or gaseous medium within a gastight envelope.

> *cold–cathode tube* –An electron tube containing a cathode which will emit electrons without being heated.

> *gas tube* –A partially evacuated electron tube containing a small amount of gas. Ionization of the gas molecules is responsible for the current flow.

*Dictionary of Science and Technology* (1971):

> *electron tube or valve (Electronics).* In U.S., any electron device in which the electron conduction is in a vacuum or gas inside a gas–tight enclosure.

Markus, *Electronics Dictionary* (4th ed. 1978):

> *electron tube* An electron device in which conduction of electricity is provided by electrons moving through a vacuum or gaseous medium within a gastight envelope. A tube may provide rectification, amplification, modulation, demodulation, oscillation, limiting, *and a variety of other functions.* Examples include cathode–ray tubes, gas tubes, phototubes, and vacuum tubes. Also called electronic tube, radio tube, tube, and valve (British). [Emphasis added.]

In addition to the foregoing definitions in technical authorities, plaintiff cites the following definition in *The Random House Dictionary of the English Language* (Unabridged 1966 ed.):

> *electron tube.* See *vacuum tube.*

> *vacuum tube,* \* \* \* 2. a sealed glass tube containing a partial vacuum or a

---

**8.** As correctly pointed out by plaintiff, the terms "electronic tubes", as set forth in item 687.60, TSUS, and "electron tubes" are inter-

changeable. See Markus, *Electronics Dictionary* (4th ed. 1978), p. 218–219.

highly rarefied gas, in which may be observed the effects of a discharge of electricity passed through the tube between electrodes leading into it. Also called *electron tube*; * * *.

The lexicographic authorities relied upon by plaintiff define "electron tube" in terms of rudimentary but essential features: An airtight enclosure, evacuated or gas–filled, providing a medium for the flow and conduction of electrons between two electrodes. Plainly, the SVP tubes satisfy these basic criteria of an electron tube (R. 38). Equally important, the record establishes that the imports are "cold cathode tubes", which by definition are electron tubes.

■ At the trial, defendant's witness Strauss testified that there are many types of electron tubes (R. 202), and it is well settled that an *eo nomine* designation without limitation includes all forms of the article. *United States v. National Carloading Corp. et al.*, 48 CCPA 70, C.A.D. 767 (1961). Hence, the *eo nomine* provision for electronic tubes, in the superior heading to item 687.60, includes all forms of such tubes.

### III

To recapitulate briefly, the SVP tubes are clearly described in the TSUS as both "apparatus * * * for the protection of electrical circuits" under item 685.90, and as "electronic tubes" under the superior heading to item 687.60. Thus, an issue of relative specificity of the two competing provisions is posed by virtue of General Interpretative Rule 10(c) which, so far as pertinent, reads:

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; * * *

In *F. L. Smidth & Company v. United States*, 56 CCPA 77, 85, C.A.D. 958, 409 F.2d 1369 (1969), the Court of Customs and Patent Appeals construed the above–quoted statutory rule of relative specificity as follows:

This [interpretative rule] appears to us to mean this: if an article is determined to be clearly described in two or more [tariff schedule] items, selection of the controlling item by relative specificity is mandatory and takes precedence over other judge–evolved methods of resolving ambiguity, including resort to extrinsic aids such as legislative history.

■ Under rule 10(c), the provision that more specifically describes the SVP tubes is "the item having requirements which are 'more difficult to satisfy'." *Smidth, supra*, 56 CCPA at 85, 409 F.2d at 1376; *Ozen Sound Devices, supra*. The *eo nomine* provision for "electronic tubes" is undoubtedly more restrictive and "difficult to satisfy" than the provision for "apparatus * * * for the protection of electrical circuits". Electronic tubes, although performing a variety of functions, are essentially one kind of device. Apparatus for the protection of electrical circuits, on the other hand, are comprised of a number of highly diverse devices, such as fuses (R. 172, 179, 206), circuit breakers, lightning arresters (R. 85), insulators, transformers (R. 181–182), carbon block assemblies (R. 76, 96), carbon arresters (R. 121, 168), gas tubes, neon bubbles (R. 84, 172), zener diodes, varistors, selenium rectifiers (R. 168), etc. Such heterogeneous devices perform different functions in circuit protection, and have no common physical criteria.

*United States v. Ampex Corp. et al.*, 59 CCPA 134, C.A.D. 1054, 460 F.2d 1086 (1972) is somewhat analogous to the instant case respecting the issue of relative specificity. There, the competing provisions were item 685.20 (television apparatus) and item 688.15 (insulated electrical conductors). Addressing the issue of relative specificity, the Appellate Court commented (59 CCPA at 137, 460 F.2d at 1088):

On that issue [relative specificity], we agree with dissenting Judge Newman that:

Insulated electrical conductors, *although taking a variety of forms*, are essentially one kind of device. Television apparatus, on the other hand, is comprised of an *entire group of varied kinds of devices* * * *. [Emphasis added.]

And *cf. Stella D'Oro Biscuit Co., Inc. v. United States*, 79 Cust.Ct. 28, C.D. 4709 (1977), *aff'd per curiam*, 65 CCPA 52, C.A.D. 1205, 570 F.2d 945 (1978).

## IV

Finally, plaintiff contends that the SVP tubes are properly classifiable under item 687.60, TSUS, on the basis that there was an established and uniform practice by Customs of classifying the tubes under that provision, which practice was changed without the requisite notice in contravention of 19 U.S.C. § 1315(d).[9] Additionally, plaintiff relies upon the doctrine of *stare decisis* and cites three "abstract" decisions of the Customs Court holding that the SVP tubes were properly dutiable under item 687.60 rather than item 685.90. Abstracts P73/89, P73/104 and P73/121 (70 Cust.Ct. 393, 396 and 399 (1973)). These three cases were submitted by the parties on an agreed statement of facts and the classification under item 687.60 was conceded by defendant without trial or briefing.

Since I agree with plaintiff's arguments that the common meaning of "electronic tubes" embraces the SVPs in issue and that item 687.60 is more specific than item 685.-90, there is no need to address the issues raised by plaintiff concerning the Government's alleged change in administrative practice in classifying the SVP tubes under item 687.60 and *stare decisis*.

## CONCLUSION

For the reasons stated herein, plaintiff's alternative claim under item 687.60, TSUS, is sustained, but plaintiff's primary claim under item 709.66, TSUS, is dismissed. Judgment will be entered accordingly.

**9.** In support of its claim under 19 U.S.C. § 1315(d), plaintiff introduced in evidence a letter from the Bureau of Customs (now Customs Service) dated July 25, 1970 ruling that the SVP tubes are classifiable as electronic tubes under item 687.60 (plaintiff's exhibit 3), and also the testimony of its witness Renken that approximately 100 shipments entered by plaintiff over a two–year period were classified and liquidated by Customs under item 687.60 (R. 16). Plaintiff argues that the challenged assessments under item 685.90 constitute the imposition of a higher rate of duty than the Secretary of the Treasury had found applicable to the merchandise under an established and uniform practice without the notice required by the statute.