**The UNITED STATES, Appellant,**

v.

**SIEMENS AMERICA, INC. and Siemens Corporation, Appellees.**

**SIEMENS AMERICA, INC. and Siemens Corporation, Appellants,**

v.

**The UNITED STATES, Appellee.**

Appeal Nos. 80–33, 80–35.

United States Court of Customs and Patent Appeals.

June 25, 1981.

Rehearing Denied August 27, 1981.

---

Nies, J., dissented in part and filed opinion in which Markey, C. J., joined.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, Atty. in charge, Madeline B. Kuflik, New York City, for United States.

Louis Schneider, Angela Pitsaris, New York City, for Siemens.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER, and NIES, Judges.

BALDWIN, Judge.

This matter is before us on appeal by The United States (Government) and cross-appeal by Siemens America, Inc. and Siemens Corporation (collectively, Siemens) from the judgment of the United States Customs Court, now the United States Court of International Trade (court), 84 Cust.Ct. ——, C.D. 4856, 496 F.Supp. 266 (1980). The court held that all the imported merchandise, known as surge voltage protectors [1] (SVP), was improperly classified as "other electrical apparatus for the protection of electrical circuits" under item 685.90 of the Tariff Schedules of the United States (TSUS) and sustained Siemens' alternative claim for classification as "electronic tubes" under item 687.60, TSUS. The court also held that the SVPs containing Pm147 were not classifiable under item 709.66, TSUS, as "apparatus based on the use of radiations from radioactive substances," the provision Siemens had primarily claimed to be applicable. The rejection of classification under item 709.66 is the subject of Siemens' cross-appeal. We affirm the judgment of the court dismissing Siemens' claim under item 709.66, reverse the judgment of the court holding the SVPs properly dutiable under item 687.60, and remand this matter for further action consistent with this opinion.

## Relevant Statutes

Customs Service Classification

SCHEDULE 6. - METALS AND METAL PRODUCTS
Part 5. - Electrical Machinery and Equipment

\* \* \* \*

685.90        Electrical switches, relays, fuses,
                  lightning arresters, plugs, receptacles,
                  lamp sockets, terminals, terminal strips,
                  junction boxes and other electrical
                  apparatus for making or breaking
                  electrical circuits, for the protection
                  of electrical circuits, or for making
                  connections to or in electrical circuits;
                  switchboards (except telephone switch-
                  boards) and control panels; all the
                  foregoing and parts thereof......14, 12, 10 or 8% ad val
                                          depending on year of entry

---

1. Some of the imported SVPs contained the radioactive substance promethium 147 (Pm147).

Siemens' Claim

SCHEDULE 7. - SPECIFIED PRODUCTS; MISCELLANEOUS
AND NONENUMERATED PRODUCTS
Part 2. - Optical Goods; Scientific and
Professional Instruments; Watches;
Clocks, and Timing Devices; Photographic
Goods; Motion Pictures; Recordings and
Recording Media

\*   \*   \*   \*

Subpart B. - Medical and Surgical Instruments
and Apparatus; X-Ray Apparatus

\*   \*   \*   \*

Apparatus based on the use of X-rays or of
the radiations from radioactive substances,
whether for medical, industrial, or other
uses, and parts thereof:

\*   \*   \*   \*

709.66      Apparatus based on the use of radiations
from radioactive substances, and parts
thereof.......................9.5, 8, 7 or 6% ad val
depending on year of entry

Siemens' Alternative Claim

SCHEDULE 6. - METALS AND METAL PRODUCTS
Part 5. - Electrical Machinery and Equipment

\*   \*   \*   \*

Electronic tubes (except x-ray tubes);
photocells; transistors and other
related electronic crystal components;
mounted piezo-electric crystals; all
the foregoing and parts thereof:

\*   \*   \*   \*

687.60      Other...................10, 8.5, 7 or 6% ad val.
depending on year of entry

\*   \*   \*   \*

Part 5 headnotes:

1.   This part does not cover --

\*   \*   \*   \*

(vi) electrical instruments and
apparatus provided for in
schedule 7.

---

### Background

The SVPs in issue are gas discharge tubes consisting of a hermetically sealed glass insulator filled with argon in which two electrodes are spacially set apart. Some of the imported SVPs contain a minute quantity of Pm147 within the glass insulator. To protect electrical circuitry from damage and to protect against injury to personnel, SVPs provide a conductive path for unwanted and excessive surges of voltage caused by lightning, powerline shorts and other sources.

At a specific voltage level known as the "breakdown voltage," SVPs will switch from a nonconductive state to a conductive

state quite rapidly when subjected to an excessive voltage transient. Conduction occurs when the argon within the tube becomes ionized.

In the imported SVPs containing Pm147, the radioactive material emits radiation in the form of beta particles which preionizes or facilitates ionization of the argon thus stabilizing the breakdown voltage and increasing the speed of ionization. The breakdown voltage itself is a design parameter controlled primarily by the electrode spacing and gas fill pressure of the SVPs.

According to the court below, the record clearly established that the SVPs are used for the protection of electrical circuits and are described in item 685.90 as classified by the Customs Service (Customs). However, in accordance with headnote 1 (vi) of Schedule 6, Part 5, supra, classification under item 685.90 is precluded if the SVPs with Pm147 are described in item 709.66 as claimed by Siemens. The court stated that the "based on" language in item 709.66 evinced a "Congressional intent to embrace merchandise in which radiation from radioactive substances is its *sine qua non*." 496 F.Supp. at 269. From the evidence presented, the court found that the SVP's overvoltage protection function is not based upon the use of radioactive material, that the SVPs' argon ionizes irrespective of the presence of Pm147, that the speed of ionization and a specific breakdown voltage is achievable without the use of radioactive substances, and that the breakdown voltage is controlled by factors other than the presence of radiation. The court concluded that the inclusion of Pm147 in the SVPs is not essential to their basic function, that Pm147 is not a fundamental and essential constituent of the SVPs, and, therefore, that radiation is not the *sine qua non* of the SVPs in issue. Accordingly, item 709.66 did not describe the SVPs containing Pm147.

Siemens argues that since Pm147 serves to stabilize the SVP's breakdown voltage and since the breakdown voltage is an important SVP specification, the radiation from Pm147 in a SVP is an essential and fundamental determinant of SVP characteristics. Continuing, Siemens argues that the plain meaning of the words "based on" indicates that it is unnecessary that the sole characteristic of an apparatus derives from the radiation and that it is only necessary that the radiation be the underlying "basis" on which the apparatus is dependent which, according to Siemens, is clearly the case with its SVPs containing Pm147.

Concerning whether the SVPs are described in item 687.60, the court construed the statutory language of the *eo nomine* provision for "electronic tubes" in accordance with its common meaning. According to certain technical lexicographic authorities relied upon by the court, an "electron tube"[2] is defined in terms of rudimentary but essential features, i. e., an airtight enclosure, evacuated or gas-filled, providing a medium for the flow and conduction of electrons between two electrodes. Since the SVPs satisfied those basic criteria, the tubes are described in item 687.60. Additionally, the court found that the SVPs are "cold cathode tubes" which by definition are electron tubes.

The Government maintains that the common meaning definition of the term "electronic tube" used by the lower court is incomplete and, while describing the basic physical tube components, fails to include the unique functions for which electronic tubes were developed and for which they are known. The Government argues that the function of electronic tubes is based upon the controlled flow of electrons which enables electronic tubes to assist in the performance of various functions such as amplification, conversion of alternating current to direct current, detection, rectification, and the like; therefore, the definition of electronic tubes, according to the Government, must reflect the tube characteristic of ability to control the flow of electrons and various functions performed by various electronic tubes.

**2.** The parties to this appeal do not dispute that the term "electronic tube" is synonomous with the term "electron tube."

Next the court considered the relative specificity of items 685.90 and 687.60 in accordance with General Interpretative Rule 10(c), TSUS,[3] since both items describe the SVPs in issue. According to the court, the provision that more specifically describes the SVPs is the item having requirements which are more difficult to satisfy and that item is the *eo nomine* provision for electronic tubes since electronic tubes are "essentially one kind of device" (even though they perform a variety of functions) and circuit protector apparatus are "comprised of a number of highly diverse devices" which perform different functions in circuit protection and which have no common physical criteria.

The Government contends that the court erred in finding item 687.60 more specific than item 685.90 arguing that the court failed to apply a general rule of customs jurisprudence that goods described by both a use provision and an *eo nomine* provision are more specifically provided for under the use provision unless there is a clearly expressed legislative intent to the contrary. Under the application of that rule, item 685.90 ("other electrical apparatus for the protection of electrical circuits"), a use provision, is more specific than the *eo nomine* provision for "electronic tubes" (item 687.-60).

The Government also argues that the court apparently determined relative specificity by merely counting the number of items of merchandise which are encompassed by the competing provisions and that this is an improper test. The proper test, according to the Government, is which provision is more specific with respect to the imported article irrespective of the number of articles comprehended by the competing

provisions, and the more specific provision is the one having requirements which are more difficult to satisfy.

Since the court agreed with Siemens that item 687.60 is the applicable classification over item 685.90, it found no need to address two additional issues raised by Siemens, i. e., the SVPs were properly classifiable under item 687.60 since (1) there was an established and uniform practice by Customs of classifying SVPs under that provision which was changed without requisite notice in contravention of 19 U.S.C. § 1315(d);[4] and (2) three "abstract" decisions of the court held the SVPs dutiable under item 687.60 rather than item 685.90 and the doctrine of *stare decisis* controls.

## OPINION

*The Item 709.66 Issue*

■ It is axiomatic that a statute must be construed to carry out legislative intent. To determine that intent, one must first look to the statutory language itself. See, *Intercontinental Fibers, Inc. v. United States*, 64 CCPA 31, C.A.D. 1179, 545 F.2d 744 (1976). Doing so, we agree with the court below that the plain meaning of the "based on" language of item 709.66 evinces Congressional intent to limit the provision to goods in which the use of radiation is a fundamental and essential constituent. The use of radiation must be an indispensable requisite for the apparatus which, however, does not mean that the apparatus must be based solely on the use of radiation.

Thus, the issue here becomes whether or not the use of radiation from Pm147 in the imported SVPs containing such radioactive material is a fundamental and essential constituent of the SVPs.

3. Rule 10(c) states in pertinent part that "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it."

4. § 1315(d) provides:
No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform

practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties or the imposition of countervailing duties under section 1303 of this title.

■ The court below found as matters of fact that Pm147 is not a fundamental and essential constituent of the SVPs and that Pm147 radiation is not the *sine qua non* of the SVPs in issue. A finding of fact of the court below will not be disturbed unless the finding is clearly contrary to the weight of the evidence. *Pharmacia Laboratories, Inc. v. United States*, 67 CCPA ——, C.A.D. 1236, 609 F.2d 491 (1979). A review of the evidence of record clearly supports the findings concerning the role of Pm147 and its radiation in the operation of the SVPs. Siemens has not persuaded us otherwise.

■ The specific function of the SVPs is to provide a conductive path for excessive voltage transients. This function is determined by physical characteristics of the SVPs other than radiation from radioactive substances. Ionization and thus conduction occur regardless of the presence of radiation. The breakdown voltage is determined primarily by electrode spacing and gas fill pressure. The Pm147 radiations do not determine this breakdown voltage; the radiations merely help to stabilize it and increase the speed of ionization. In fact, some of the SVPs imported by Siemens contain no radioactive material. Thus we cannot agree with Siemens' argument that the Pm147 radiation is the "underlying basis" on which the SVP is dependent. Accordingly, we agree with the lower court that "it would require a substantial magnification of the role played by the promethium 147 to find that the SVP tubes are 'based on the use of radiations from radioactive substances,' within the purview of the statute." Therefore, we affirm the judgment of the court concerning the item 709.66 issue brought here on cross-appeal by Siemens.

### The Item 687.60 Issue

■ We agree with the lower court's determination of the common meaning of the *eo nomine* provision for "electronic tubes" in item 687.60 and that SVPs fall within that definition and, thus, within item 687.-60. Finding no error in the court's disposition of the item 687.60 issue, we adopt that portion of the court's opinion, i.e., Section II, as our own.

The additional criteria desired by the Government require the definition of the term "electronic tube" to include not only electron flow control but also a limitation so that only those electronic devices which have the ability to assist in various functions such as amplification, rectification, conversion, or the like and meet the basic physical configuration are encompassed by item 687.60 as electronic tubes. Such limitations are too restrictive and uncalled for in light of the technical authorities relied upon by the court below in determining the common meaning of the term "electronic tube."

### The Relative Specificity Issue

■ Since all the imported SVPs are described both under item 685.90 as "apparatus * * * for the protection of electrical circuits" and under item 687.60 as "electronic tubes," the issue of the relative specificity of the two competing provisions, as in the court below, must be reached. In accordance with General Interpretative Rule 10(c), supra note 3, the issue is which of the two competing provisions "most specifically describes" the SVPs. As this court has stated previously, and as the court below properly stated, the provision that more specifically describes the SVPs is the item having requirements which are "more difficult to satisfy." *Ozen Sound Devices v. United States*, 67 CCPA C.A.D. 1246, 620 F.2d 880, 883 (1980).

Stating that *United States v. Ampex Corp.*, 59 CCPA 134, C.A.D. 1054, 460 F.2d 1086 (1972) was "somewhat analogous"[5] and finding that electronic tubes are "es-

---

5. While concerned with the issue of relative specificity, the *Ampex* case is of no assistance here since it did not involve an *eo nomine* provision in competition with a use provision. Additionally, the goods described in the more specific provision of *Ampex* (insulated electrical conductors) performed only one function, i.e., conveyance of electricity from one locus to another; whereas here the goods described in the lower court's more specific provision (electronic tubes) perform a "variety of functions."

sentially one kind of device" whereas apparatus for the protection of electrical circuits comprises "a number of highly diverse devices," the lower court determined that the "electronic tube" provision was "undoubtedly more restrictive and 'difficult to satisfy.'" *Siemens America*, 496 F.Supp. at 272. We disagree with that determination.

The SVPs are described in item 685.90 by their specific and only use, i.e., circuit protection. Item 687.60 is not limited to any such specific use requirement. Comparing the two competing provisions, both of which are quite broad in their reach, it is clear that the use provision, item 685.90, is "undoubtedly more restrictive and 'difficult to satisfy.'" Therefore, the SVPs are more specifically described in item 685.-90.

Our conclusion concerning the relative specificity of the two competing provisions is supported by the general rule of construction that, in the absence of legislative intent to the contrary, a product described by both a use provision and an *eo nomine* provision is *generally* more specifically provided for under the use provision.[6] *Travenol Laboratories, Inc. v. United States*, 67 CCPA —, C.A.D. 1247, 622 F.2d 1027 (1980); cf. *United States v. Simon Saw & Steel Co.*, 51 CCPA 33, C.A.D. 834 (1964) (recognizing the general rule but finding the *eo nomine* provision in question to be more specific). In accordance with the construction aid, the SVPs in issue generally will be more specifically provided for under the use provision of item 685.90 as "other electrical apparatus * * * for the protection of electrical circuits" than under the *eo nomine* provision of item 687.60 as "electronic tubes."

## Other Issues

Siemens had raised two additional issues in the court below, one concerning an alleged improper change in established and uniform practice regarding the duty rate to be applied to the SVPs and the other concerning *stare decisis*. Since the court agreed with Siemens that item 687.60 embraces the SVPs and is more specific than item 685.90, it found no need to reach these issues. However, we have disagreed with the court below by finding item 685.90 more specific than item 687.60. Therefore, these two additional issues need to be reached below before they are properly reviewable here. Thus, we remand this matter to the lower court for consideration of the two additional issues.

## Summary

We hold that the SVPs containing Pm147 are not classifiable under item 709.66 as "apparatus based on the use of radiations from radioactive substances." We also hold that although all the SVPs are "electronic tubes" within the meaning of item 687.60, item 685.90 ("other electrical apparatus * * for the protection of electrical circuits") describes all the SVPs in issue more specifically than item 687.60. Accordingly, we *affirm* the judgment of the court below dismissing Siemens' claim under item 709.66 (Appeal No. 80–35); and we *reverse* the court's judgment holding the SVPs properly dutiable under item 687.60 (Appeal No. 80–33) and *remand* to the U. S. Court of International Trade for further action consistent with this opinion.

NIES, Judge, with whom MARKEY, Chief Judge, joins, dissenting in part.

I disagree with the majority only respecting the relative specificity of items 687.60 and 685.90. Admittedly, this case presents a close question, but I see no error in the reasoning of the court below that it is more difficult to satisfy the requirements of a single kind of device (an electron tube) than it is to satisfy the requirements of *any one*

---

**6.** There is no requirement that this aid to statutory construction be *automatically* applied when one of the competing provisions is a use provision and the other an *eo nomine* provision. The aid is merely "*a convenient rule of thumb for resolving issues where the compet-*

*ing provisions are otherwise in balance.*" *Simon Saw & Steel Co.*, 51 CCPA 33, 40, C.A.D. 834 (1964) (emphasis in original). Thus the fact that the lower court did not automatically apply the rule is not reversible error *in and of itself* as the Government maintains.

of many different kinds of devices (fuses, circuit breakers, lightning arresters, insulators, transformers, carbon block assemblies, carbon arresters, gas tubes, neon bulbs, Zener diodes, varistors, selenium rectifiers, and so forth), especially considering that such highly diverse devices function differently and have no common physical criteria.

Since the *eo nomine* provision in item 687.60 for electronic tubes is more difficult to satisfy than the general catch-all, basket-like provision in item 685.90 covering "other electrical apparatus ... for the protection of electrical circuits," the construction aid that a use provision is *generally* more specific than an *eo nomine* provision need not be used.

Accordingly, I would affirm the judgment of the Court of International Trade in its entirety.

Markey, Chief Judge, filed concurring statement.