SIEMENS AMERICA, INC. AND SIEMENS CORPORATION, PLAINTIFFS
v. UNITED STATES, DEFENDANT

Consolidated Court No. 72-5-01093

(Decided October 7, 1981)

*Freeman, Meade, Wasserman & Schneider,* Esqs. (*Louis Schneider* and *Kenneth Nathan Wolf,* Esqs., of counsel) for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, and *Madeline B. Kuflik,* Esq., for the defendant.

NEWMAN, *Judge:* This action is before me pursuant to a remand issued by the Court of Customs and Patent Appeals in *The United States* v. *Siemens America, Inc. and Siemens Corporation,* 68 CCPA ——, C.A.D. 1266, 653 F. 2d 471 (June 25, 1981, rehearing denied August 27, 1981).

BACKGROUND

In my decision (84 Cust. Ct. 180, C.D. 4856, 496 F. Supp. 266 (1980)) the imported merchandise, known as surge voltage protectors (SVPs), was held to be improperly classified by Customs as "other electrical apparatus * * * for the protection of electrical circuits" under item 685.90 of the Tariff Schedules of the United States (TSUS), but Siemens' alternative claim for classification as "electronic tubes" under item 687.60, TSUS was sustained. Further, it was determined that the SVPs, which contained a radioactive substance, were not classifiable under item 709.66, TSUS, as "Apparatus based on the use of radiations from radioactive substances," the provision Siemens had primarily claimed to be applicable.

The Court of Customs and Patent Appeals affirmed the dismissal of plaintiffs' claim under item 709.66, and agreed with my determina-

tion that the SVPs were "electronic tubes" within the purview of item 687.60. However, the appellate court concluded that the SVPs were more specifically described under item 685.90 than under item 687.60, and reversed and remanded for reasons indicated below. Judge Neis, joined by Chief Judge Markey, dissented-in-part, and wrote for affirmance of this Court's findings and judgment.

In its post-trial brief, Siemens contended that there was an improper change in an established and uniform practice regarding the duty rate to be applied to the SVPs, and also raised an issue concerning *stare decisis*. Inasmuch as I agreed with Siemens' argument that item 687.60 described the merchandise and that such provision was more specific than item 685.90, the above-mentioned issues were not reached. However, in view of its conclusion that item 685.90 more specifically describes the SVPs, the appellate court remanded the matter to this Court for consideration of the issues not reached.

CHANGE IN ESTABLISHED AND UNIFORM ADMINISTRATIVE PRACTICE

We first consider the issue raised by plaintiffs concerning an alleged improper change in an established and uniform practice regarding the duty rate to be applied to the SVPs. In this connection, plaintiffs rely specifically upon 19 U.S.C. § 1315(d) and 19 CFR § 16.10(c) (1970). These provisions, so far as pertinent, read:

*19 U.S.C. § 1315 (d)*

(d) No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; * * *

*19 CFR § 16.10(c) (1970)*

A change to a lower rate of duty, when decided upon, shall be applicable to all unliquidated entries and to all protested entries involving the same issue which have not been forwarded to the United States Customs Court.

Section 1315(d) was construed in *Diibro Pearl Co., Inc.* v. *United States*, 62 CCPA 95, C.A.D. 1152, 515 F. 2d 1157 (1975). There, the Court stated (62 CCPA at 96):

The key issue is "whether the Secretary of the Treasury (or his delegate) has made a 'finding' of 'an established and uniform practice' pursuant to section 315(d)." *Asiatic Petroleum Corp.* v. *United States*, 59 CCPA 20, 22, C.A.D. 1029, 449 F. 2d 1309 (1971). Such a "finding" does not appear in the record before us, and this "obviates any need for notice prior to an effective change." *Martin Brokerage Co.* v. *United States*, 36 Cust. Ct. 35

39, C.D. 1750 (1956). The abstracted Customs Service decision relied upon by appellant, T.D. 68–77(3), 2 Cust. Bull. 157 (1968), does not on its face, purport to be such a "finding" as required by section 315(d), nor does this abstract convey any "clear impression" that a "finding" under that section was intended. *Asiatic Petroleum Corp.* v. *United States,* supra.

As in *Ditbro Pearl,* the key issue here is "whether the Secretary of the Treasury (or his delegate) has made a 'finding' of 'an established and uniform practice' pursuant to section 1315(d)." It is apparent from the pertinent language of the statute, couched in the past tense, that the "established" practice Congress had in mind is an antecedent or existing (as well as uniform) practice.

In the present case, plaintiffs rely upon a letter ruling dated July 27, 1970, which clearly is a response to plaintiffs' request for a ruling concerning future or prospective importations of SVPs, and such letter ruling makes no reference whatsoever to any existing or "established" practice. Consequently, the July 27, 1970 letter ruling is not a finding of an established and uniform practice within the purview of section 1315(d)._

When the Secretary of the Treasury or his delegate has intended to make a finding within the purview of section 1315(d), appropriate language was used to accomplish that result. For example, T.D. 52816 (86 Treas. Dec. 333 (1951)).

> *To Collectors of Customs and Others Concerned:*
> *A practice has developed* of classifying all combination pocket and table cigarette lighters under paragraph 1552 of the Tariff Act of 1930, as modified, as smokers' articles, rather than under paragraph 1527(c), as modified, as articles designed to be carried on or about the person. *The practice developed after decisions had been rendered by the United States Customs Court* * * *.
>
> \* \* \* \* \* \* \*
>
> However, as this ruling will result in the assessment of duty at a higher rate than has heretofore been assessed on combination lighters *under a uniform and established practice,* it shall be applied to such lighters only when entered or withdrawn from warehouse for consumption after 30 days after the publication of this decision in the weekly Treasury Decisions. [Emphasis added.]

More, compare the letter of November 5, 1965, written by the Acting Commissioner of Customs to the Collector of Customs at New York in *Asiatic Petroleum Corp.* v. *United States,* 59 CCPA 20, 21–22, C.A.D. 1029, 449 F. 2d 1309 (1971), which not only stated that the Bureau of Customs had given extensive consideration to the tariff treatment of the merchandise in unliquidated entries, but specifically mentioned the existence of an established and uniform practice.

Further, see the letter written by the Director, Classification and Value Division, dated August 31, 1976, set forth at length in the recent decision of our Appellate Court in *Rank Precision Industries, Inc.*, v. *United States*, 68 CCPA ——, C.A.D. 1269, 660 F. 2d 476 (1981), which made specific reference to *prior* liquidations and to a uniform and established practice.

The short of the matter is: here there was no "finding" by the Secretary of the Treasury or his delegate in the language of section 1315(d) or in words of similar import that an established and uniform practice existed as to the subject merchandise.

Significantly, plaintiffs do not contend that the letter of July 27, 1970 contains a finding of an established and uniform practice respecting the classification of SVPs. Rather, plaintiffs' position appears to be that the letter ruling and the subsequent liquidation of some 100 of plaintiffs' entries under item 687.60 over a period of approximately two years at the Port of New York created *de facto* an established and uniform practice as to the classification of SVPs. But I conclude that under all the facts and circumstances, evidence of such liquidated entries by a single importer at one port of entry for such relatively short period of time is inadequate to demonstrate the "established and uniform practice" contemplated by § 1315(d). *Cf. Biddle Sawyer Corp.* v. *United States*, 48 Cust. Ct. 30, C.D. 2310 (1962), *aff'd* 50 CCPA 85, C.A.D. 826 (1963). In its brief (footnotes at p. 51), plaintiffs state that it was the sole importer of SVPs, and that such merchandise was imported solely at the port of New York. However, such assertions are unsupported by the record. Fundamentally, statements by counsel in a brief are not evidence. *Tropi-Cal* v. *United States*, 63 Cust. Ct. 518, C.D. 3945 (1969). In a word, the record does not adequately show there was, in fact, an established and uniform practice relative to the classification of SVPs.

Respecting plaintiffs' reliance upon 19 CFR § 16.10(c)(1970), there was no evidence submitted that this regulation was violated in the classification of the subject merchandise. Indeed, plaintiffs assert that "[i]n conformity with these regulations the Customs Service did in fact liquidate or reliquidate, as appropriate [under item 687.60] entries antecedent to the ruling [of July 27, 1970]". However, plaintiffs contend that "the Customs Service was required to continue to liquidate entries of merchandise subsequent to the July 27, 1970 ruling letter [under item 687.60], pursuant to the directive therein, until such time as a legal and lawfully promulgated change of practice or policy was implemented." I disagree.

The regulation relied upon by plaintiffs, 19 CFR § 16.10(c), applies only where there has been "A change in classification resulting in a

lower rate of duty". There is nothing in the letter ruling of July 27, 1970 suggesting that it was issued in accordance with section 16.10(c). In any event, section 16.10(c), while applicable to unliquidated and protested entries, does not require a notice of a change in classification resulting in higher duties. *Cf.* 19 U.S.C. § 16.10(a). No other regulation has been cited by plaintiffs.[1] In sum, neither 19 U.S.C. § 1315(d) nor 19 CFR 16.10(c) can be the basis for sustaining plaintiffs' alternative claim under item 687.60, TSUS.

### Stare Decisis

Plaintiffs argue that three prior abstracted judgments of the Customs Court are *stare decisis* in the present case. These judgments involved Siemens America, Inc. as plaintiff and are reported at 70 Cust. Ct. 393, 396 and 399 (1973). An examination of these abstracts reveals that the Court's decisions that the merchandise was classifiable under item 687.60 were predicated upon an "agreed statement of facts" submitted by the parties without trial or briefing of the issues or an opinion by the Court. Defendant has advised the Court in the present case that, since the date of those decisions, no further cases involving the classification of SVPs have been stipulated.

The determination of our appellate court in the instant case that the SVPs are more specifically described under item 685.90 than under item 687.60 shows that the abstracted judgments, which in effect hold to the contrary, are clearly erroneous. When a prior decision is clearly erroneous, *stare decisis* does not apply. *United States* v. *R. J. Saunders & Co., Inc.*, 42 CCPA 128, 136, C.A.D. 584 (1955); *Sol Raphael* v. *United States*, 23 CCPA 253, 258, T.D. 48110 (1936).

For the foregoing reasons, this action is dismissed, and judgment will be entered accordingly.

---

[1] Plaintiffs do not claim that 19 CFR 16.10a(c) (1970) is applicable. That regulation provides that any decision published pursuant to 19 CFR 16.10a(b) shall be deemed to establish a uniform practice within the meaning of section 1315(d) and also specifies the procedure for changing a published decision to impose higher duties.